# CHARLESTON

ROUSH *v.* HYRE *et al.*

, Submitted January 29, 1907. Decided April 23, 1907.

1. APPEAL—*Appealable Decree—Failure to Appeal—Effect.*

A decree construing a deed, and adjudicating that the widow of the grantor took and held thereunder the exclusive use and enjoyment of personal estate for her natural life, and that upon her death the plaintiff as surviving grantee was entitled in remainder to said property and had the exclusive right to the possession and enjoyment thereof, and referring the cause to a commissioner to report upon the necessary facts to carry such decree into execution is an appealable decree; and this Court has no jurisdiction after two years, upon an appeal from a subsequent decree adjudging the plaintiff not entitled to the relief prayed for and dismissing the bill, to review such former decree. (p. 126.)

2. LIFE ESTATE—*Personalty—Accounting.*

Upon the death of such life-tenant her personal representative is chargeable with the principal sum received from all of such personal estate sold by the life-tenant, with interest thereon from the

death of the life-tenant, and must turn over to the remainder-man all personal property of every kind in his hands as such personal representative, and a decree will be given against him therefor. (p. 127.)

Appeal from Circuit Court, Jackson County.

Bill by Sarah R. Roush against Elizabeth Hyre and others. Decree for defendant, and plaintiff appeals.

· *Reversed.*

WM. O. PARSONS and V. S. ARMSTRONG, for appellant.

JAS. A. SEAMAN, W. H. O'BRIEN, W. P. KERWOOD and CHAS. E. HOGG, for appellees.

MILLER, JUDGE:

By deed dated July 7, 1879, Jonathan Hyre, in consideration of natural love and affection, granted to his daughters Mary Elizabeth Waybright and Sarah Rebecca Roush a tract of 224 1-4 acres of land in Jackson county; subject, however, to a provision in the *habendum* clause that said tract should remain in his exclusive control, use, possession and enjoyment during his natural life, and that should his wife, Elizabeth Hyre, survive him she should have the exclusive custody, possession, use and enjoyment of said land during her natural life, but should she after his death marry her life estate should then terminate and she should receive only one-third of said land as her dower. Said clause also contains the following provision: "And the said party of the first part doth grant unto said parties of the second part all the personal estate and choses in action that may be on hand at the death of said Jonathan and his wife Elizabeth; and said Elizabeth Hyre shall have the exclusive use and enjoyment of said personal estate and choses in action for and during her natural life, provided she shall remain the widow of said Jonathan, but should she marry again she shall receive only one-third of such personal estate and choses in action as and for her dower therein." This clause also contains the further provision that "said parties of the second part shall hold said land in equal parts or shares (and shall also hold the personal estate and choses in action in like equal parts or shares as tenants in common until all the property hereby conveyed shall be partitioned and divided as aforesaid); and it is further

provided that should the said Mary Elizabeth Waybright or
the said Sarah Rebecca Roush die without any lawful issue
surviving them, then the part or share of all the property
hereby conveyed shall go to the survivor of them, and shall
not be subject to the control or use of their present husbands
or of any husband that either of them may hereafter have;
but it is further provided that, notwithstanding anything
herein contained, the said Mary Elizabeth Waybright and
the said Sarah Rebecca Roush shall have full power and au-
thority to sell and convey said tract of land after the death
of said Jonathan Hyre or his said wife Elizabeth, or the
marriage of said Elizabeth, wife of said Jonathan, and the
proceeds thereof invested in other lands which shall descend
to the survivor of said Mary Elizabeth or Sarah Rebecca
upon the happening of the death of either of them without
lawful issue surviving them; and the said Jonathan Hyre
doth covenant that he will warrant generally the property
hereby conveyed.''

Jonathan Hyre died July 10, 1880, when his widow took
possession of the real and personal property on hand and
conveyed by said deed, retaining same until her death, which
occurred in February, 1901. Mary Elizabeth Waybright
died in October, 1896, without issue surviving her, and what-
ever rights she had in the real and personal property con-
veyed by the deed of her father passed to her sister.

By her will, made June 29, 1899, pending this suit, Mrs.
Hyre, after providing for the payment of her debts and sun-
dry small special bequests, including her daughter, Mrs.
Roush, to whom she bequeathed ''the sum of ten dollars, and
no more, for the reason that she has been sufficiently pro-
vided for by her father, Jonathan Hyre,'' bequeathed to her
son, David F. Hyre, the residue of all her property ''of
every kind and character, including money, notes, bonds and
all other evidences of indebtedness, together with all out-
standing accounts.''

October 6, 1881, Elizabeth Hyre was appointed and quali-
fied as administratrix of her husband's estate, with D. F.
Hyre and M. S. Waybright as sureties on her fiduciary bond.
Subsequently, in February, 1882, there was an appraisement
of all the personal property of Jonathan Hyre as shown by
the administratrix, which included household goods, farming

implements, cows, hogs, sheep and horses, aggregating in value $559.75. In October following Mrs. Hyre made a settlement of her fiduciary accounts, charging herself with the appraisement bill, and crediting herself with certain disbusements aggregating $814.13. These disbursements included $200 claimed by her as exempt, $52.50 commissions, and $247.20 paid G. D. Camden for Lot M. Morrill, bringing the estate apparently in debt to her $254.38. The will of Elizabeth Hyre was probated in March, 1901; and in April, following there was an appraisement of her estate, which consisted wholly of cash, and notes subject to some credits, as follows: M. S. Waybright, January 1, 1897, at three years, $700; A. B. Staats, March 30, 1894, at sixty days, $50; cash in pocketbook, $1.21; cash turned over to the executor by W. H. O'Brien, attorney, $1,179.12; in all, $1,930.33.

The original bill in this cause was filed in October, 1897, by Sarah R. Roush against Elizabeth Hyre, as administratrix of Jonathan Hyre and in her own right, D. F. Hyre and M. S. Waybright. The object of the suit was to have an accounting by Elizabeth Hyre as life-tenant of the land and personal property conveyed by the deed of July 7, 1879, and by D. F. Hyre, whom the bill alleged had come into possession and control of the personal property through his mother. The bill also alleged waste and misappropriation of the personal property by Mrs. Hyre and her son, and prayed for a special receiver. The bill was twice amended; the last time (after the death of Mrs. Hyre), D. F. Hyre in his individual and executorial capacity was made defendant. The bill charged that all of the money and funds which went into the hands of the said D. F. Hyre upon the death of his mother, and mentioned in the alleged appraisement of her estate, belonged to the plaintiff as surviving grantee under said deed, and prayed for a decree against him. D. F. Hyre, who had not answered the original or first amended bill, filed his answer to this last bill. In his answer, for the first time the claim was made that the deed of Jonathan Hyre passed no interest in said personal property to the plaintiff upon the death of her father, but that the entire estate therein became vested in Elizabeth Hyre.

August 8, 1902, the cause being brought on to be heard

upon all the pleadings and depositions taken and filed, the court decreed "that under and by virtue of the deed of July 7, 1879, * * * Elizabeth Hyre took and had the exclusive use and enjoyment of the personal estate and choses in action owned and possessed by the said Jonathan Hyre at the date and delivery of said deed, and which passed by said deed, for and during her natural life, and that said plaintiff and said Mary Elizabeth Waybright were entitled jointly to the remainder of said personal estate and choses in action at and after the date and delivery of said deed. And it appearing to the court that the said Mary Elizabeth Waybright departed this life before the death of said Elizabeth Hyre, it is therefore adjudged, ordered and decreed that the plantiff Sarah R. Roush be and she is entitled under said deed * * * in remainder to the personal property and choses in action granted in and by said deed;" that she "had the exclusive right to the possession and enjoyment thereof;" "that her title thereto became absolute upon the death of the said Elizabeth Hyre;" and "that the said Elizabeth Hyre had only the right to the exclusive use and enjoyment of said personal property and choses in action * * * during her natural life."

By the same decree the court referred the cause to a commissioner to ascertain and report by separate items all the personal property which went into the hands of the said Elizabeth Hyre by virtue of said deed, the value thereof at that time, what has become of the same and the proceeds thereof, and any other matter deemed pertinent or that might be required by the parties to the cause.

The commissioner reported that of the personal estate of Jonathan Hyre on and at his death and which then went into the possession of Elizabeth Hyre, and such of which as was not worn out by usage, dead by reason of age, or was used up by Elizabeth Hyre or at her death passed into the hands of the plaintiff, consisted of certain enumerated articles of household goods and farming implements, a horse and some hogs, of the aggregate value of $352.75; that on the 10th day of July, 1880, the date of the death of Jonathan Hyre, other property covered by his deed went into the hands of Elizabeth Hyre, including household goods, farming implements, horses and cattle, which were sold and disposed of by

Mrs. Hyre for money amounting to $882; that at the death of her husband the said Elizabeth Hyre received from his hands notes and cash aggregating $399.33; that the foregoing property, including that reported to be in the hands of the plaintiff, constituted all the property that went into the hands of Elizabeth Hyre at the death of her husband and claimed under said deed of July 7, 1879; that the money received from the sale of said personal property by Elizabeth Hyre, aggregating $1,281.33, was then in the hands of D. F. Hyre by virtue of the will of Elizabeth Hyre.

On the hearing before the commissioner, the defendant D. F. Hyre requested him to respond to the following: First, what personal property was owned by Jonathan Hyre July 7, 1879, the date of the delivery of the deed, and what, if any, of this property was in the possession or control of Elizabeth Hyre at the time of her death, and passed into the hands of D. F. Hyre as her executor; second, what sums of money, if any, were loaned on July 7, 1879, and prior thereto, and on that date unpaid, to whom loaned, when loaned, in what amounts, and how were such loans evidenced—if by note or notes, by whom signed and the dates thereof; third, what personal property owned by Jonathan Hyre on July 7, 1879, and charged in the appraisement of his estate, went into the possession of the plaintiff or is in her possession, and the aggregate appraised value thereof; fourth, what debts and taxes did Jonathan Hyre owe at the time of his death, and how and by whom were the same paid; fifth, what was the average annual income to Elizabeth Hyre from the home farm during the time the same was farmed by M. S. Waybright. To the first and second inquiries the commissioner, in apparent disregard of his main report, answered "none;" to the third inquiry he also answered "none;" to the fourth inquiry he answered that Elizabeth Hyre had paid $32.52, taxes due at the time of the death of her husband; $325, balance of purchase money due G. D. Camden, attorney in fact, subject to the repayment of $81.33, over-payment refunded to her; $250, borrowed money, to D. F. Hyre; $8 to Willis Houtchin—aggregating $615.50; and to the fifth inquiry he answered that "he cannot say and does not undertake to report thereon."

D. F. Hyre excepted to said report, in so far as the com-

missioner reported that the money received by Mrs. Hyre from the sale of personal property and the cash, and money collected from notes held by Jonathan Hyre, were then in his hands. These were the only exceptions to the report.

On August 11, 1904, the cause was again brought on to be heard on all the pleadings and evidence, former decrees and proceedings, the report of the commissioner and the exceptions of D. F. Hyre; and, without otherwise passing on said exceptions, the court decreed that the plaintiff was not entitled to the relief prayed for, and dismissed her bills with costs to the defendant. It is from this decree alone that this appeal is prosecuted. The effect of this decree was to sustain the exceptions of the defendant D. F. Hyre to the report of the commissioner.

Elaborate briefs of counsel on both sides present the case as if the appeal from the decree of August 11, 1904, brought with it for our consideration the former decree of August 8, 1902, construing said deed. As that decree was pronounced more than two years before the petition for the present appeal was presented, unless interlocutory it is not involved in the decree appealed from and cannot be reviewed. Following former precedents of this Court, we are bound to hold that that decree was a final adjudication of the principles of the cause. It adjudged that by the deed of July 7, 1879, Elizabeth Hyre took an estate for life in the personal estate of her deceased husband, and that Sarah R. Roush as surviving grantee took a vested estate in remainder and, upon the death of her mother, became entitled to the possession thereof; and, although the cause was referred to a commissioner, it was for the purpose of carrying into effect the principles of the decree. Such a decree is appealable, and the parties whose interests are affected thereby are not bound to wait to appeal therefrom until the decree is carried into execution; and this Court cannot consider any errors which the circuit court may have committed in that decree. *Hoy* v. *Hughes*, 27 W. Va. 779; *Laidley* v. *Kline*, 21 W. Va. 21; *Kahle* v. *Oil Co.*, 51 W. Va. 313; *Garrett* v. *Bradford*, 28 Grat. 609.

Neither of the parties having appealed from said former decree within the statute of limitation, we are without jurisdiction upon this appeal to consider any errors assigned ex-

cept such as may be involved in the decree of August 11, 1904. The only matters left open for adjudication by that decree were the questions arising upon the exceptions of the defendant D. F. Hyre to the report of the commissioner. As we have seen, the commissioner reported that upon the death of her husband there went into the hands of Elizabeth Hyre under said deed of July 7, 1879, property the proceeds from which and from the collection of notes aggregated the principal sum of $1,281.33, which said sum went into the hands of the defendant D. F. Hyre on the death of his mother. D. F. Hyre excepted to this finding of the commissioner, upon the ground that it was not supported by the evidence. It is admitted by him that upon the death of his mother there came into his hands in notes and cash a sum aggregating $1,930.33. He admits having received this money. The depositions of many witnesses were taken, including the testimony of Mrs. Hyre, D. F. Hyre, the plaintiff and Levi Roush, her husband. Some of the testimony of the plaintiff and her husband related to transactions and communications had with Jonathan and Elizabeth Hyre in their lifetime. Mrs. Hyre having died before the final decree, consideration of the testimony of the plaintiff and her husband is objected to. We may safely disregard the evidence of all witnesses except Elizabeth Hyre herself, in considering the exceptions to the commissioner's report. Her testimony proves that at the date of the deed of July 7, 1879, and at the date of the death of her husband, she had no property whatsoever except that which she took under that deed; that of the property thus received by her she sold and realized principal sums amounting in the aggregate to $882; that she collected upon notes and evidences of debt which came into her hands on the death of her husband principal sums aggregating $399.33, including therein $81.33 refunded purchase money by Lot M. Morrill, and as reported by the commissioner. And the competent evidence shows beyond all controversy that the $1,930.33 which went into the hands of the defendant D. F. Hyre on the death of his mother was composed of the principal and interest accumulated upon the $1,281.33, derived from the personal estate in which his mother had a life estate by the deed of July 7, 1879; that this sum obtained by D. F. Hyre from his mother was the net sum, after payment of all

debts of the estate of Jonathan Hyre.     But we find that the
commissioner reported (and there was no exception to this
part of his report) that Elizabeth Hyre paid out of the money
derived by her in taxes, purchase money and debts of the
estate of her husband $615.50, which deducted from the $1,-
281.33 leaves $665.83 of the principal derived by her from
the proceeds of said personal property, which according to
the report of the commissioner is included in the $1,930.33
in the hands of D. F. Hyre, executor of the estate of his
mother, and who must account for the same to the plaintiff,
who is entitled thereto in remainder as of the date of the
death of her mother.

Among other rules of law governing cases of this charac-
ter applicable in the present instance, are: First, that the
life-tenant is entitled to the interest on money and choses in
action, but the principal sum which comes into his hands
must be kept intact for the remainderman; second, that his
personal representative is chargeable with whatever is re-
ceived from the sale of the personal property by the life-
tenant; third, that upon the death of the life-tenant his per-
sonal representative must turn over to the remainderman all
personal property of every kind which may be on hand.
*Bartlett* v. *Patton*, 33 W. Va. 71; *Dunbar's Exors.* v.
*Woodcock's Exors.*, 10 Leigh 628; Va. Rep. Anno. 481, and
note; *Hawthorne* v. *Beckwith*, 89 Va. 786, 791; *Pettyjohn's
Exor.* v. *Woodroof's Exor.*, 77 Va. 507. It is unnecessary
to discuss these authorities, and they are only referred to as
settling the principles of the cause.

We are of opinion, therefore, that the circuit court erred
in its decree of August 11, 1904, in adjudging that the plain-
tiff was not entitled to the relief prayed for and dismissing
her original and amended and supplemental bills, and that
said decree should be, and the same is, reversed and an-
nulled.

And, proceeding to enter such decree as the circuit court
should have entered upon the report of said commissioner,
we are of opinion to overrule the exceptions of D. F. Hyre
to said report and to confirm the same; and that there should
be a decree in favor of the plaintiff against the defendant
D. F. Hyre as executor of Elizabeth Hyre for the sum of
$665.83 (the residue of the principal sum derived by said

Elizabeth Hyre from the sale of personal property and from cash and the collection of notes, less the sum of $615.50 reported by the commissioner as having been paid out by her for debts against the estate of Jonathan Hyre), with interest upon the said balance from the first day of February, 1901, until paid, together with the costs in this Court and in the circuit court expended.

*Reversed.*