## CHARLESTON.

PARR *et al v.* BLUE RIDGE COAL COMPANY *et al.*

Submitted September 10, 1912.   Decided March 11 1913.

1. CORPORATIONS—*Insolvency—Appointment of Receiver.*

The facts alleged in the bill in this case justified the appointment of a special receiver of the defendant corporation. (p. 178).

2. SAME—*Insolvency—Special Receiver.*

Whenever a corporation has become so hopelessly insolvent that it cannot longer continue in business and plaintiffs' rights will suffer by depreciation and loss, arising from forced sales and large costs incurred in multiplicity of suits by creditors, good cause is shown, under section 58, chapter 53, Code 1906, for the appointment of a special receiver of its property. (p. 178).

3. SAME—*Insolvency—Receivership—Forfeiture of Lease.*

When a court of equity has in such case appointed a special receiver of the property of an insolvent mining corporation, and is proceeding to wind up its affairs, it may in the interest of other creditors properly enjoin the lessors of a mining lease from forfeiting and re-entering the leased premises, for mere

breach of the covenant therein to pay rents and royalties and require them to accept payment out of the proceeds of the sale of the property and plant of the corporation. (p. 178).

(LYNCH, JUDGE, absent).

Appeal from Circuit Court, Harrison County.

Bill by Charles S. Parr and others against the Blue Ridge Coal Company and others. Decree for plaintiffs, and S. R. Griffin and Lillie M. Griffin appeal.                    *Affirmed.*

*John Bassel* and *Homer Strosnider,* for appellants.
*Philip P. Steptoe* and *George M. Hoffheimer,* for appellees.

MILLER, JUDGE:

Plaintiffs Parr and Thompson, creditors and stockholders, as well as directors of defendant company, filed their bill in the circuit court, against Blue Ridge Coal Company, a corporation, Sheridan R. Griffin, Lillie M. Griffin, Philip P. Steptoe, trustee, and others, and obtained the appointment of a special receiver, and a temporary injunction restraining Griffin and wife from declaring a forfeiture of the lease of the coal underlying a tract of 69.6 acres, executed by them June 17, 1907, to Isham Keith and Wilfred D. Wamsley, and then owned and held by defendant company. The appeal from the order appointing the special receiver, allowed on the petition of Griffin and wife, was on motion of plaintiffs subsequently dismissed, and it is conceded that the only subject left for consideration is the appeal from so much of the order of January 31, 1912, as denied the motion of appellants to dissolve the injunction awarded on December 20, 1911.

Justification for the injunction and for denying appellants' motion to dissolve it must be found in the objects and purposes of the suit as disclosed by the bill. The sufficiency of the bill has been challenged by demurrer and answer of Griffin and wife. As to defendant company and all other defendants the bill stands uncontroverted.

The substantial averments of the bill are; that the Blue Ridge Coal Company is a corporation, under the laws of West Virginia; that plaintiffs Parr and Thompson, and Helen Q. Thompson, Luna A. Parr, and Wilfred D. Wamsley, are all its stock-

holders; that said company is owner by assignment of said coal lease; that said lease was upon a royalty of fifteen cents per ton for each and every ton of twenty-two hundred and forty pounds of coal, run of mine, mined, and a minimum monthly royalty after the first year of $500.00 per month, or $6,000.00 per annum, which sum or sums by the terms of the lease constitute a first lien upon the leasehold estate and all equipment and other improvements placed thereon; that a further provision of the lease is that upon the failure of the lessees to pay said royalties, or to otherwise observe the covenants and ·conditions thereof the *lessors* shall have the right at their election, after thirty days notice in writing to the lessees, to declare said contract terminated and at an end, and without further notice or legal proceedings to re-enter upon the demised premises and to take full and complete possession thereof, and also of all buildings, structures, tipples, tracks or other improvements placed thereon by the lessees.

It is further alleged that after so acquiring said lease defendant company had entered thereon, and on an adjoining lot acquired in fee, and had erected and installed a large mining plant, and for some time continued to operate the same and to pay rentals to the lessors, but that during the two years preceding the filing of the bill, owing to low prices of coal and the conditions of the market, it had been impossible to produce coal at a profit, and that the plant had been operated only at intervals and at considerable loss, by reason of which and the consequent depreciation in the value of the property, the defendant company had become utterly insolvent and unable to pay its debts; that in order to assist the company in endeavoring to tide over its difficulties plaintiffs had been compelled to personally pay numerous installments of royalties due the lessors as well as other debts, and to otherwise loan their credit by endorsements of paper, and to secure them in all which said company, on February 20, 1911, had executed to Philip P. Steptoe, trustee, a deed of trust covering said plant and property, said indebtedness and the notes, then past due and unpaid, being specifically mentioned and described and set forth therein.

It is also alleged that besides the indebtedness to plaintiffs, said company is also indebted to numerous other creditors, some

of them, naming them, had acquired judgments, and levied executions on the property of the defendant company, and that other suits and proceedings were begun or threatened; that said Steptoe, trustee, at their instance, had advertised the said plant and property to be sold, under their said deed of trust, on January 20, 1912, but that Griffin and wife, the lessors, had declared their purpose of forfeiting said lease and of re-entry prior to the day of sale, and to thereby nullify and destroy plaintiffs' security, by depriving them of the chief asset, to-wit, the leasehold, upon which they relied, and would do so unless restrained by injunctive process, and that by reason thereof and by other proceedings pending or threatened plaintiffs' security was about to be impaired or wholly destroyed; that the only way in which the interest of all creditors could be conserved was to maintain the autonomy of the plant and property as a complete and going concern, else all would be disintegrated and dissipated, and plaintiffs and other creditors would thereby suffer great loss and injury.

It is further alleged that lately a fair offer for a large part of the output of the plant had been made, which would probably enable the company to operate the plant at a fair profit, but that it was without money or credit to conduct such operations, and that it would be greatly to the advantage of all concerned to maintain the property and plant in its entirety until a sale thereof could be made. The lien and priority of the lessors for the rents and royalties reserved is conceded by the bill, but it is alleged that said property furnished ample security therefor; that a declaration of forfeiture would result in great hardships to plaintiffs and other creditors and would absolutely destroy their security; that in the event the court should decide said lessors entitled to declare a forfeiture and re-entry pending the suit plaintiffs proffered payment of such royalties, at such time and place as the court might direct. And the prayer of the bill was for the appointment of a receiver, for injunction, a convention of creditors, and for a sale of the property and distribution of the proceeds.

The material allegations of the bill are substantially admitted by the answer of Griffin and wife; but their right of forfeiture and re-entry for the non-payment of rents and royalties re-

served is affirmed; and they admit that before bill filed Sheridan R. Griffin, his wife not joining therein, gave notice in writing, of his intention to exercise said right, on and after December 18, 1911.

Respondents mainly rely upon the proposition affirmed in their answer that it was error to enjoin them from exercising the right reserved in the contract to forfeit said lease and re-enter the premises, except on condition of requiring plaintiffs or the defendant company to pay the rents and royalties in arrears. Right of forfeiture and re-entry for the breach of other covenants is here insisted on, but the notice of forfeiture does not specifically point out other covenants broken, and as we interpret both notice and answer the claim of right of forfeiture and re-entry is based solely on the alleged breach of the covenant to pay royalties.

As already noted we have not before us for review the order appointing the receiver. The sole question presented is, was it error to deny the motion of appellants to dissolve the injunction? It is conceded that before the notice of forfeiture and re-entry matured the court had taken jurisdiction and possession of the property by its receiver. If the bill was well grounded in law the injunction was merely ancillary to the main object thereof. By dissolving the injunction and thereby permitting appellants to execute their declaration of forfeiture and re-entry, would have been to withdraw the property from the jurisdiction of the court, the subject matter of the suit, and to have deprived the creditors of the benefits of their only security. As argued by counsel the motion to dissolve was not conditioned on payment of the rents and royalties in arrears. It was general, asserting absolute right of forfeiture and re-entry, regardless of the interests of others.

Section 58, chapter 53, Code 1906, provides, among other things: "When a corporation expires, or is dissolved or before its expiration or dissolution, upon sufficient cause being shown therefor, such court as is mentioned in the preceding section, may on application of a creditor or stockholder, appoint one or more persons to be receivers to take charge of and administer its assets; and whether such receiver be appointed or not, may make such orders and decrees and award such injunctions in the

cause as justice and equity may require." We have recently held with reference to this statute, that good cause is shown for the appointment of a receiver, whenever a corporation has become so hopelessly insolvent that plaintiffs' rights will suffer by depreciation and loss, arising from forced sales and large costs incurred in a multiplicity of suits by creditors; and that although insolvency may not of itself be sufficient, nevertheless good ground for the appointment of a receiver of a corporation is shown if such appointment be necessary to prevent impending depreciation and loss from insolvency so hopeless that the corporation cannot continue longer in business.

The bill in this case we think shows good cause under the statute, thus interpreted, for the appointment of the receiver. Plaintiffs were not mere contract creditors. They were creditors secured by the deed of trust to Steptoe, trustee, executed in February, 1911, months before the alleged cause of forfeiture and re-entry occurred. They had the right to charge the property with their debts. Appellants were, themselves, in effect, beneficiaries of that trust, for it secured notes held by them on which plaintiffs were sureties, and which trust covered property other than that covered by the leasehold. We refer to the adjoining lot owned in fee and covered by the buildings thereon. As lien creditors, therefore, they were in a position to redeem the property from forfeiture even if completed and entry made. It would have been very inequitable, therefore, to have dissolved the injunction and permitted forfeiture and re-entry, independently of the statute. *Arents* v. *Blackwell's Durham Tobacco Co.,* 101 Fed. R. 338. In such a case as this the equitable principles applied in *Crumlish* v. *Shenandoah Valley R. R. Co.,* 28 W. Va. 623, *Kahle* v. *Long Reach Oil Co.,* 51 W. Va. 313, and *Hollins* v. *Brierfield Coal & Iron Co.,* 150 U. S. 371, have application. What the appellants had the right mainly to insist upon was payment of the rents and royalties due. The right of forfeiture and re-entry was primarily by way of security for payment of rents and royalties, and not that the lessors might by exercising the right seize and appropriate to their own use the property and plant of the defendant company, and thereby to deprive all other creditors of their only security for the payment of their debts. Having taken jurisdiction by its receiver to wind up the

affairs of the company and administer its assets, the court could brook no interference with its jurisdiction over the subject matter of the suit while thus in *custodia legis.* *In re Tylor,* 149 U. S. 164, 182, this rule was distinctly applied, with respect to the claim of a taxing officer asserted against the receivership. In *Gunning* v. *Sorg,* 214 Ill., 616, 73 N. E. 870, it was decided, that a court of equity in possession of leasehold property by its receiver, even after suit of unlawful detainer by lessor against lessee, should exercise its power to determine the validity of the claim of forfeiture asserted against the recivership. In *Fleming* v. *Hotel Co.,* 69 N. J. Eq. 715, 61 Atl. 157, the court denied the lessor possession for forfeiture accrued prior to the receivership, it appearing, as in this case, that on a sale of the property the receiver would be enabled out of the proceeds of the sale of the property to pay the rent, and required him to resort to that fund for payment thereof. To the same effect is *Johnson* v. *Lehigh Valley Traction Co.,* 130 Fed. R. 932.

As already indicated, and as fully argued by counsel, the injunction was ancillary to the main object of the suit. The object of the suit was the conservation and administration of the corporate property for the benefit of all creditors, and possession, by and through the receiver, operated as a restraint upon interference by anyone without permission of the court. The injunction added little if anything to the power of the court and its receiver over the property, except that it stayed action by the lessors in declaring a forfeiture and attempt to re-enter. High on Receivers, (4th ed.) sections 140, *et seq.,* 163, *et seq.;* *Thornton* v. *Washington Savings Bank,* 76 Va. 432; *Davis* v. *Gray,* 16 Wall. 203; *In re Tyler, supra; Hitz* v. *Jenks,* 185 U. S. 155, 166.

Elaborate briefs have been presented by able and diligent counsel on the questions whether there was in fact cause or causes of forfeiture, and if so, whether or not forfeiture had not been waived by the lessors. But as we view the case we think it unnecessary to go into these questions. If there was right of forfeiture and re-entry, the remedy of appellants, we think, was not by way of motion to dissolve the injunction but by application to the court below to require the receiver to yield possession of the property. That such is the proper practice

seems to be well established by the authorities. High on Re-
ceivers, (4th ed.) section 139; *Wiswall* v. *Sampson*, 14 How.
52, 65; *Krippendorf* v. *Hyde*, 110 U. S. 276, 283; *Hitz* v. *Jenks*,
*supra; Fleming* v. *Fleming Hotel Co., supra; Henderson* v.
*Cardondale Coal & Coke Co.*, 140 U. S. 25.

Finding no error in the decree overruling the motion of the
appellants to dissolve the injunction, we are of opinion to affirm
it, and it will be so ordered.

*Affirmed.*